<u>**ORAL ARGUMENT HELD MARCH 19, 2026**</u>

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 25-1150**

---

**MODERNWEST LONGMONT, LLC**

*Petitioner,*

v.

**FEDERAL AVIATION ADMINISTRATION**,

*Respondent.*

**ON PETITION FOR REVIEW OF ORDER OF
THE FEDERAL AVIATION ADMINISTRATION**

---

**PETITIONER MODERNWEST LONGMONT, LLC'S
PETITION FOR REHEARING OR REHEARING *EN BANC***

---

M. Roy Goldberg, Esq.
D.C. Bar 416953
D.C. Circuit Bar No. 39860
CLARK HILL PLC
601 13th Street N.W.
Suite 600 South
Washington, DC 20005
Telephone:  (202) 552-2388
Email: rgoldberg@clarkhill.com
Counsel for Petitioner ModernWest
Longmont, LLC

Dated: July 10, 2026

ClarkHill\M8682\499851\288615498.v2-7/10/26

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT PURSUANT TO FRAP 40 ...................................................1

PROPOSED EN BANC ISSUE...................................................................2

STATEMENT OF THE CASE.....................................................................3

    The ModernWest 1 and 2 Projects ....................................................3

    The FAA's Issuance and Refusal to Withdraw the Poison Pill Letters ..........3

    Petitioner Did in Fact Argue that It Possessed Standing................................4

    The May 29 Panel Decision.........................................................5

ARGUMENT ...........................................................................................6

I.    THE PANEL IMPROPERLY ELEVATED ARTICLE III
    REDRESSABILITY FROM A REQUIREMENT OF LIKELIHOOD
    TO A REQUIREMENT OF PROOF OF FUTURE LEGISLATIVE
    APPROVAL. ...................................................................................6

II.    THE PANEL DECISION VIOLATED THE SEPARATION-OF-
    POWERS DOCTRINE EMBEDDED IN THE U.S. CONSTITUTION
    BY REQUIRING PETITIONER TO PRESENT AFFIDAVITS
    FROM THE LONGMONT CITY COUNCIL AS TO HOW IT
    WOULD VOTE IN THE FUTURE. ...........................................10

III.    THE PANEL'S REASONING EFFECTIVELY REQUIRES
    EVIDENCE THAT IS OFTEN IMPOSSIBLE TO OBTAIN.....................11

IV.    OTHER THAN NOT PROVIDING THE AFFIDAVITS
    IMPROPERLY REQUIRED BY THE PANEL, PETITIONER
    DEMONSTRATED THAT IT POSSESSES THE REQUISITE
    STANDING. ...................................................................................12

i

V.  THE PANEL IMPROPERLY TREATED THE CITY'S OTHER STATED REASONS AS CONCLUSIVELY INDEPENDENT CAUSES. .........................................................................14

VI.  THIS CASE PRESENTS A QUESTION OF EXCEPTIONAL IMPORTANCE. ........................................................................15

CONCLUSION....................................................................................17

CERTIFICATE OF COMPLIANCE WITH FRAP 32(g) AND 40(d)(3) .............19

ADDENDUM ......................................................................................20

PETITIONER'S CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES....................................................................21

RULE 26.1 CORPORATE DISCLOSURE STATEMENT …………… . 22

PANEL DECISION........................................................................23

CERTIFICATE OF SERVICE ...........................................................29

ClarkHill\M8682\499851\288615498.v2-7/10/26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bogan v. Scott-Harris*,
  523 U.S. 44 (1998)..................................................................................................2

*Diamond Alternative Energy, LLC v. EPA*,
  145 S.Ct. 2121 (2025)..........................................................................................8, 9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...............................................................................................7

*ModernWest Longmont, LLC v. Federal Aviation Administration*,
  177 F.4th 290 (May 29, 2026).........................................................1, 2, 4, 5, 6, 9

*National Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930
  (D.C. Cir. 2004) ...................................................................................................13

*Tenney v. Brandhove*,
  341 U.S. 367 (1951)..............................................................................................2

*Village of Arlington Heights v. MHDC*,
  429 U.S. 252 (1977)......................................................................................4, 5, 7

**Regulations**

14 C.F.R. Part 77..................................................................................................4

ClarkHill\M8682\499851\288615498.v2-7/10/26

**STATEMENT PURSUANT TO FRAP 40**

Petitioner ModernWest Longmont LLC ("Petitioner" or "ModernWest") seeks panel rehearing or rehearing *en banc* because the panel decision at 177 F.4th 290 (May 29, 2026) (and in the Addendum hereto) improperly denied Petitioner constitutional standing to challenge as arbitrary and capricious letters improperly issued by a local Federal Aviation Administration ("FAA") official because the legislative body in Longmont, Colorado that received the letters did not provide affidavits to this Court attesting as to how the legislators would vote in the future if the letters were withdrawn. That requirement conflicts with fundamental principles protecting legislative deliberation and imposes a standing burden that litigants often cannot satisfy.

The Longmont City Council fully approved ModernWest's mixed-use development project known as ModernWest 1, and the follow-on ModernWest 2 project was in the process of being approved with no issues until John Bauer, a now-retired official with the Denver Airports District Office ("ADO"), issued letters to the Council which threatened the Council with removal of federal funding if the Council did not abide by the Airport Manager's desire to reverse the Council's prior approval and issue no future approvals, so that ModernWest could no longer pursue its projects (hereafter, the "Poison Pill Letters").

The panel fatally faulted Petitioner for not procuring affidavits from the Longmont City Council Members as to how they would vote in the future if the Poison Pill Letters were withdrawn. The panel held that ModernWest lacked "standing" to challenge the FAA's issuance of and failure to withdraw the Poison Pill Letters because "**There are no such affidavits**" from the members of the Longmont City Council. 177 F.4th at 296 (emphasis added). Notably, although FAA argued (erroneously) in its brief and at oral argument that standing was not demonstrated, even FAA did not claim that it was mandatory for Petitioner to procure affidavits from legislative branch officials as to how those legislators would vote on some future occasion. That was a new requirement imposed for the first time in the panel decision. It ignores the inherent difficulty in procuring such affidavits from legislative officials as to future votes, and the fact that the Supreme Court has recognized broad protection for legislative activities. Legislators generally cannot be compelled to testify about their legislative motives, deliberations, or decision-making processes. *See Tenney v. Brandhove*, 341 U.S. 367 (1951); and *Bogan v. Scott-Harris*, 523 U.S. 44 (1998).

### PROPOSED EN BANC ISSUE

Whether it was contrary to Article III or the separation-of-powers principle in the United States Constitution for the panel to dismiss the Petition for lack of standing because the Petitioner did not present evidence attesting how members of

an independent legislative body would exercise future discretionary authority if the challenged federal action were withdrawn. This issue is exceptionally important because it affects not only FAA cases, but any challenge to federal action where final implementation depends on how a state or local legislative or quasi-legislative body might react to the federal action being sought.

## STATEMENT OF THE CASE

### The ModernWest 1 and 2 Projects

Petitioner is a developer of mixed-used projects which has been working for years to develop mixed-use residential and commercial projects (ModernWest 1 and ModernWest 2) near the Vance-Brand Airport ("Airport") in Longmont, Colorado. The Longmont City Council, which owns and operates the Airport, and is the federally-funded "sponsor," approved the zoning for ModernWest 1 and was in the process of ruling on the zoning for ModernWest 2 when the FAA issued the "Poison Pill Letters."

### The FAA's Issuance and Refusal to Withdraw the Poison Pill Letters

Following lobbying by the newly-appointed Airport Director, the FAA local airport office in Denver issued the Poison Pill Letters to the Longmont City Council, which asserted that allowance of the ModernWest 1 and 2 Projects would violate the federal Grant Assurance 21 obligation of Longmont to ensure that the proposed

3

development project was compatible with normal Airport operations. Rec. 877, JA527; Rec. 258, JA83; Rec. 404, JA176; Rec. 409, JA179A.

The Poison Pill Letters were contradicted by the fact that the FAA division assigned to actually rule on the safety of a proposed development under 14 C.F.R. Part 77 had issued "no-hazard" determinations for the ModernWest Projects 1 and 2.  Opening Br. at 12-15, Rec. 157-58, JA29-30; Rec. 190-209; JA61-80.

**Petitioner Did in Fact Argue that It Possessed Standing**

In connection with its requirement that Petitioner procure and present affidavits from the Longmont City Council Members attesting as to how they would vote on the ModernWest Projects in the future, the panel erroneously stated that Petitioner "never argued standing in its opening brief." 177 F.4th at 298.  In fact, the Opening Brief asserted:

> Standing exists because (1) ModernWest suffered an "injury in fact" in the form of the City of Longmont reversing its approval of ModernWest 1 and refusing to approve ModernWest 2 because of the [Poison Pill] Letters; (2) the injury is fairly traceable to the issuance and refusal to withdraw the [Poison Pill] Letters; and (3) the injury would be redressed by FAA withdrawing the [Poison Pill] Letters.

> Prior to the FAA interference, ModernWest received local government approvals and FAA Part 77 authorization, and was fully prepared to proceed with the mixed-use development projects. It repeatedly requested that FAA either explain or rescind the [Poison Pill] Letters, but FAA definitively refused to do either.

> FAA cannot avoid having to answer for its arbitrary and capricious issuance and refusal to withdraw the [Poison Pill] Letters, by asserting that the ultimate zoning approval is made by Longmont and not FAA.

> *See Village of Arlington Heights Metropolitan Housing Dev't Corp.*, 429 U.S. 252, 261-62 (1977) (housing developer had standing to challenge exclusionary zoning practices, even though elimination of those policies did not guarantee that the developer's project would in fact be built); *id*. at 264 (prospective low-income tenant had standing to challenge the zoning practices because he would qualify for proposed project, even though there was no guarantee that the project would be built, or that plaintiff would be selected to live there if the project was built) [plus three other similar cases]

Opening Br. at 31-32.

In addition, Petitioner's Reply Brief devoted several pages to why Petitioner possessed the requisite standing which due to word limits are not repeated here but detail in full why standing exists. *See* Reply Brief, at 8-12.

## **The May 29 Panel Decision**

The panel did not address the merits of Petitioner's APA challenge. Instead, the panel held that Petitioner could not pursue its argument that the FAA had acted arbitrary and capriciously in sending and refusing to withdraw the Poison Pill Letters because the record did not contain sworn affidavits from the Longmont City Council Members as to how those officials would vote in the future if the ModernWest 1 and 2 Projects came before the legislative body again after withdrawal of the Poison Pill Letters.

The panel focused on the fact that standing requires a petition to demonstrate from the record the existence of "substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as

5

to causation and the likelihood of redress." 177 F.4th at 296. As a factual matter, Petitioner satisfied this burden by demonstrating that the Longmont City Council had approved ModernWest 1and was on course to approve ModernWest 2 until the FAA issued the Poison Pill Letters. Unfortunately, that was not enough for the panel, which imposed a requirement that the Petitioner procure and present affidavits from the Longmont City Council attesting as to how they would vote in the future after withdrawal of the Poison Pill Letters: "**There are no such affidavits or supporting record facts here.**" 177 F.4th at 296-97 (emphasis added).

## ARGUMENT

I.    **THE PANEL IMPROPERLY ELEVATED ARTICLE III REDRESSABILITY FROM A REQUIREMENT OF LIKELIHOOD TO A REQUIREMENT OF PROOF OF FUTURE LEGISLATIVE APPROVAL.**

The panel's decision conflicts with settled Article III standing principles by effectively requiring ModernWest to prove how independent municipal decisionmakers would vote in the future if FAA's challenged communications were withdrawn. The City of Longmont denied ModernWest's proposal after FAA warned that approval would place the City in violation of federal grant assurances associated with its airport funding. ModernWest sought removal of that federal obstacle. The panel nevertheless concluded that redressability was lacking because ModernWest did not establish that the City would likely approve the project if FAA's letters were withdrawn.

6

Article III does not impose such a burden. Rather, the Supreme Court has repeatedly held that a plaintiff need only show that the requested relief is likely to redress its injury, not that relief guarantees a favorable outcome. Thus, for example, in *Village of Arlington Heights, supra,* 429 U.S. 252, the Court stated:

> Here there can be little doubt that MHDC meets the constitutional standing requirements. The challenged action of the petitioners stands as an absolute barrier to constructing the housing MHDC had contracted to place on the Victorian site. If MHDC secures the injunctive relief it seeks, that barrier will be removed. An injunction would not, of course, guarantee that Lincoln Green will be built. MHDC would still have to secure financing, qualify for federal subsidies, and carry through with construction. **But all housing developments are subject to some extent to similar uncertainties**. *Id*. at 261 (emphasis added).

Yet here, to satisfy the court's redressability standard, ModernWest would effectively have needed declarations, affidavits, testimony, or other evidence from City decisionmakers indicating that they would likely approve the project if FAA withdrew its objections. That approach transforms the redressability inquiry into something far more demanding than Article III requires. Under the panel's logic, whenever a third-party governmental body retains discretion to act, a plaintiff must effectively prove in advance how that body will exercise its future discretion.

Whether a petitioner has standing to challenge a particular government action depends, in part, upon whether the petitioner is "an object of the action" at issue. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). When a petitioner is an object of the action it seeks to challenge, causation and redressability are

7

usually easy to demonstrate. *Id.* Here, the object of the action it seeks to challenge was not the Longmont City Council's ultimate decision, but rather that FAA's arbitrary and capricious decision to issue and not withdraw its Poison Pill Letters.

In the recent Supreme Court ruling in *Diamond Alternative Energy, LLC v. EPA*, 145 S.Ct. 2121 (2025), the Court also rejected the D.C. Circuit's improperly narrow application of the standing doctrine to require affidavits which were not likely to be obtained. The same result should occur here.

In *Diamond Alternative*, the Court stated that "Article III's redressability requirement serves to align injuries and remedies. The primary goals of that requirement are to ensure that plaintiffs do not sue the wrong parties and that courts do not issue advisory opinions. **The redressability requirement should not be misused, however, to prevent the targets of government regulations from challenging regulations that threaten their businesses**." 145 S.Ct. at 2138 (emphasis added). Here too, the redressability requirement should not be misused to prevent ModernWest – which was the target of FAA's arbitrary and capricious conduct – from challenging FAA actions that threaten ModernWest's real estate development business.

"Rather, to show redressability, the plaintiff must simply 'show a predictable chain of event' that would likely result from judicial relief and redress the plaintiff's injury." *Id*. The Supreme Court stated:

> Requiring the plaintiff to produce affidavits from regulated parties would be especially problematic in cases of this kind. It would render the plaintiff's ability to obtain judicial review dependent on the happenstance of whether the plaintiff and the relevant regulated parties are aligned and share litigation interests—and whether the regulated party is willing to publicly oppose (and possibly antagonize) the government regulator by supporting the plaintiff's suit. Such a rule would create incentives for gamesmanship and could make it difficult or impossible to establish standing in cases where the standing analysis should be straightforward. **A heightened "proof of redressability" requirement of that kind would ultimately close the courthouse doors to many traditional challenges to agency action. . . . Such a rule has little to commend it, and we decline to adopt it**.

*Id*. at 2139. The panel's attempt to distinguish *Diamond Alternative* (177 F.4th at 295-96) is unavailing, as it misses the point of the difficulty of obtaining an affidavit from a party who may be "unwilling to publicly oppose (and possibly antagonize) the government regulator" (here the FAA) that controls whether or not the City Council continues to receive federal funding for its airport.

The panel's requirement that Petitioner produce affidavits from the Longmont City Council Members as to how they would vote in the future imposed a "heightened proof of redressability" requirement of a kind that is being used in this case – and will be used in other litigations – to "ultimately close the courthouse doors to many traditional challenges to agency action."

The panel's reasoning would render a petitioner's ability to obtain judicial review dependent on the happenstance of whether the legislative body is willing to publicly oppose (and possibly antagonize) the government regulator by supporting

the petition for review. Such a rule would create incentives for gamesmanship and could make it difficult or impossible to establish standing in cases where the standing analysis should be straightforward.

As in *Diamond Alternative*, the panel's rule "has little to commend it," and it should be reheard and reversed.

## II. THE PANEL DECISION VIOLATED THE SEPARATION-OF-POWERS DOCTRINE EMBEDDED IN THE U.S. CONSTITUTION BY REQUIRING PETITIONER TO PRESENT AFFIDAVITS FROM THE LONGMONT CITY COUNCIL AS TO HOW IT WOULD VOTE IN THE FUTURE.

The panel decision also violated the separation-of-powers principle in the United States Constitution when it required Petitioner to procure and present affidavits from the Longmont City Council members as to how they would vote in the future if the FAA was forced to withdraw its Poison Pill Letters. Such evidence necessarily turns on the future deliberative processes of a legislative body.

That requirement is deeply problematic. Legislative bodies act collectively, not individually. Council members cannot irrevocably commit themselves to future votes. Legislative deliberations evolve in response to changing facts, public input, legal developments, and discussions among members. Courts have long recognized protections for legislative decisionmaking designed to prevent judicial interference with these processes. Requiring a litigant to obtain and submit evidence concerning

how legislators would vote in the future effectively places constitutional standing on a collision course with principles of legislative immunity and legislative privilege.

The problem is particularly acute here because the relevant decisionmaker was not a private actor but a governmental body exercising discretionary authority. The panel's approach effectively conditions judicial review on obtaining evidence from legislators regarding hypothetical future decisions. Such a rule creates an impossible dilemma. If legislators decline to speculate regarding future votes—as many would reasonably do—the plaintiff loses standing. If legislators invoke legislative privilege or decline to participate in litigation regarding future legislative action, the plaintiff likewise loses standing. In either circumstance, access to judicial review becomes dependent not on Article III principles but on the willingness of legislators to opine about future votes.

## III.  THE PANEL'S REASONING EFFECTIVELY REQUIRES EVIDENCE THAT IS OFTEN IMPOSSIBLE TO OBTAIN.

The practical effect of the panel's decision is to require litigants to procure statements from members of legislative or quasi-legislative bodies predicting future votes. Here, the panel faulted ModernWest for failing to provide evidence demonstrating that the City would revisit and approve the development if FAA's Poison Pill Letters were withdrawn. In practical terms, the most obvious evidence capable of satisfying the panel's standard would be affidavits from individual members of the Longmont City Council indicating that they would support approval

11

if the FAA's objections were removed. But legislative decisionmaking does not operate this way. Individual council members cannot bind themselves to future votes. Legislative deliberations continue. Circumstances change. The composition of a legislative body may change. Moreover, legislators frequently enjoy protections designed to prevent judicial intrusion into legislative decisionmaking. Requiring evidence of future legislative voting behavior therefore imposes a burden that is not merely difficult but often impossible to satisfy.

The Constitution does not require a plaintiff seeking review of federal agency action to produce advance commitments from local legislators regarding how they will vote on a hypothetical future application.

## IV. OTHER THAN NOT PROVIDING THE AFFIDAVITS IMPROPERLY REQUIRED BY THE PANEL, PETITIONER DEMONSTRATED THAT IT POSSESSES THE REQUISITE STANDING.

It was more than clear that the Poison Pill Letters caused the City Council to reverse its support for the ModernWest 1 and 2 Projects. There is abundant evidence in the record that the Poison Pill Letters had a "determinative" *and* "coercive effect" on the City's treatment of ModernWest:

1.     Prior to the FAA interference, ModernWest received local government approvals and FAA Part 77 authorization and was fully prepared to proceed with the mixed-use development projects.

2.     ModernWest 1 had been fully approved with staff support for concept

and preliminary plat and was almost through site review with staff approval. JA591; JA196. The project had passed all of the public review processes and was in administrative review with staff support when as a direct response to the Poison Pill Letters the staff reversed itself and sent the project BACK to public hearings.

3.      ModernWest 2 had staff support and approval from the planning commission on its way for City Council approval like ModernWest 1 had received, prior to denial by the City Council based on the Poison Pill Letters. JA591.

4.      The September 6, 2024, Longmont City Council Resolution denied the concept plan for the ModernWest 2 Project because the "proposed concept plan amendment" violated FAA "rules and regulations" due to the FAA Airports District Office's conclusion that "the proposed concept plan amendment is not compatible with surrounding properties and does not mitigate potential adverse impacts on surrounding properties – specifically by proposing a multi-family residential land use in close proximity to the Vance Brand Municipal Airport."  JA198.

Far from ignoring FAA's [and ultimately the panel's] reliance on *National National Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930 (D.C. Cir. 2004) (Resp. Br. at 26-31), Petitioner in its reply explained why *National Wrestling* was not controlling here:

> In *National Wrestling*, associations representing interests of collegiate men's wrestling coaches, athletes and alumni challenged the Title IX enforcement policy of the Department of Education. Plaintiffs asserted that the department's three-part test for determining whether college

programs unlawful discriminate against one gender. Plaintiffs contended that they possessed standing to challenge the three-part test because educational institutions might eliminate or reduce the size of their men's wrestling team as a result. *Id*. at 937.

However, unlike the current case, there was no factual predicate in *National Wrestling* for a particular college men's wrestling program to believe that the institution had eliminated or reduced the men's wrestling program *at that college* because of the federal governmental agency's three-part test. Any "determinative" or "coercive effect" of the federal policy on a particular institution was indeed speculative. *See* 366 F.3d at 939 ("Appellants do not suggest that any particular school necessarily would forego elimination of a wrestling team or reinstate a previously disbanded program in the absence of these interpretative rules").

By contrast, the evidence here is undeniable that FAA's threat to terminate federal funding at Vance Brand Airport had a determinative and coercive impact on the City of Longmont when it came to not approving ModernWest's development applications. As ModernWest's counsel stated to FAA in January 2025.

Reply Brief, at 12-15.

Due to word limits, the remainder of these arguments are not repeated here. But the panel opted to ignore all of these arguments because of its improper conclusion that Petitioner needed to supply affidavits from the Longmont City Council attesting that at some future point they would vote to approve the ModernWest Projects after the Poison Pill Letters were withdrawn.

## V.    THE PANEL IMPROPERLY TREATED THE CITY'S OTHER STATED REASONS AS CONCLUSIVELY INDEPENDENT CAUSES.

The panel repeatedly referred to the City's "multiple independent reasons" for denying the projects. But municipal decisionmaking is seldom so

14

compartmentalized. The record demonstrated that FAA's position was not an ordinary comment from a third party. FAA informed the City that approval of the proposed development would conflict with federal obligations attached to airport funding. A reasonable municipal decisionmaker could view such a federal warning as dispositive or highly influential. The proper question therefore was not whether the City articulated additional concerns. The proper question was whether removing FAA's objection would materially increase the likelihood that the City would reach a different result. The panel never meaningfully engaged with that question. Instead, it assumed that each reason identified by the City was independently sufficient and therefore treated FAA's intervention as legally irrelevant. That approach conflicts with ordinary principles of causation and redressability.

## VI.    THIS CASE PRESENTS A QUESTION OF EXCEPTIONAL IMPORTANCE.

The implications of the panel's decision extend well beyond this dispute. Under the panel's approach, property owners, permit applicants, regulated entities, and affected citizens may be unable to challenge federal agency actions whenever a local governmental body possesses ultimate decisionmaking authority. If vacating federal action is insufficient unless a plaintiff can also prove how independent governmental officials would vote in the future, many otherwise reviewable agency actions will become functionally insulated from judicial review.

The resulting rule is especially troubling in cases involving local councils, zoning boards, planning commissions, and other legislative or quasi-legislative bodies. Plaintiffs will be asked to establish future discretionary outcomes that neither they nor anyone else can reliably predict.

Rehearing is warranted because the decision effectively converts Article III's "likely redressability" requirement into a requirement of near-certainty regarding future legislative conduct. Neither the Constitution nor precedent demands such a showing. Nothing in Supreme Court standing doctrine requires such a result. The Supreme Court has repeatedly explained that redressability turns on whether relief will likely alleviate the alleged injury, not whether future discretionary decisions can be predicted with certainty. Where government action removes a substantial obstacle to favorable treatment, standing exists even when another governmental actor retains discretion regarding the ultimate outcome. The panel's contrary approach effectively elevates legislative predictions into a prerequisite for standing.

Moreover, the implications extend far beyond this case. Under the panel's reasoning, plaintiffs challenging federal actions that influence local land-use decisions, zoning approvals, permitting determinations, infrastructure projects, or environmental reviews would frequently be required to obtain evidence regarding how local boards, councils, and commissions would vote in a future proceeding. Those bodies routinely exercise legislative or quasi-legislative authority. Their

16

future actions are inherently contingent and often protected from judicial intrusion. Yet under the panel's logic, the absence of evidence concerning future deliberations becomes a basis for denying standing.

The Constitution does not require litigants to penetrate legislative deliberative processes in order to establish standing. Nor should Article III be interpreted to incentivize judicial inquiry into future legislative decisionmaking. The panel's decision effectively imposes precisely that burden. Rehearing is warranted because the decision transforms redressability from a requirement of likelihood into a requirement that petitioners produce evidence concerning future legislative conduct that is often privileged, inherently speculative, and frequently unavailable.

The panel effectively required evidence of future legislative action from an independent municipal body while simultaneously relying on a type of evidence that may be unavailable because legislative decision-making is inherently contingent and protected.

## CONCLUSION

For the foregoing reasons, this Court should grant rehearing.

Dated: July 10, 2026                    Respectfully submitted,

                    /s/ M. Roy Goldberg
                    M. Roy Goldberg, Esq.
                    D.C. Bar 416953
                    D.C. Circuit Bar No. 39860
                    CLARK HILL PLC
                    601 13th Street, N.W.

17

Suite 600 South
Washington, DC 20005
Telephone:  (202) 552-2388
Email: rgoldberg@clarkhill.com

Counsel for Petitioner ModernWest
Longmont LLC

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(g) AND 40(d)(3)</u>

Pursuant to FRAP 32(g)(1) and 40(d)(3), I hereby certify that this Petition complies with FRAP 40(d)(3) because it was prepared with Times New Roman 14-point font, a proportionally spaced typeface, and the Petition complies with FRAP 35 because it contains 3,890 words, according to the word count of Microsoft Word.

Respectfully submitted,

*/s/ M. Roy Goldberg*
M. Roy Goldberg, Esq.
D.C. Bar 416953
D.C. Circuit Bar No. 39860
CLARK HILL PLC
601 13th Street, N.W.
Suite 600 South
Washington, DC 20005
Telephone: (202) 552-2388
Email: rgoldberg@clarkhill.com

Counsel for Petitioner ModernWest
Longmont LLC

Dated: July 10, 2026

19

## **ADDENDUM**

1.     CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES.
2.     RULE 26.1 CORPORATE DISCLOSURE STATEMENT
3.     PANEL DECISION IN *MODERNWEST LONGMONT LLC V. FEDERAL AVIATION ADMINISTRATION,* 177 F.4TH 290 (May 29, 2026)

ClarkHill\M8682\499851\288615498.v2-7/10/26

## PETITIONER'S CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1) and the Court's order dated June 26, 2025, Petitioner ModernWest Longmont LLC ("Petitioner" or "ModernWest") respectfully submits this Certificate as to Parties, Rulings and Related Cases.

### A.    Parties.

The parties in this case are the Petitioner ModernWest Longmont LLC and Respondent Federal Aviation Administration ("FAA").

### B.    Ruling under Review.

The Ruling under review is the April 30, 2025 final decision of the FAA which definitively denied ModernWest's repeated requests that the FAA rescind its baseless, arbitrary and capricious "poison pill" letters (the "FAA Letters") sent to officials of the Longmont, Colorado municipal government ("City") and its Vance Brand Municipal Airport ("Airport"). The FAA Letters have improperly and unlawfully obstructed the lawful efforts of ModernWest to construct mixed-use developments in the City, and near the Airport.

### C.    Related Cases.

This case and the issues raised by it have not previously been before this Court.

21

ClarkHill\M8682\499851\288615498.v2-7/10/26

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, ModernWest Longmont LLC states as follows:

ModernWest Longmont LLC is a limited liability company. It has no parent corporation, and no publicly held corporation owns 10% or more of its ownership interests.

The sole members of ModernWest Longmont LLC are Derek Guarascio and Margaret Freund

/s/ *M. Roy Goldberg*
M. Roy Goldberg, Esq.
D.C. Bar 416953
D.C. Circuit Bar No. 39860
CLARK HILL PLC
601 13th Street, N.W.
Suite 600 South
Washington, DC 20005
Telephone:  (202) 552-2388
Email: rgoldberg@clarkhill.com

Counsel for Petitioner ModernWest Longmont LLC

Dated: July 10, 2026

22

# PANEL DECISION

ModernWest Longmont, LLC v. Federal Aviation Administration, 177 F.4th 290 (2026)

177 F.4th 290
United States Court of Appeals,
District of Columbia Circuit.

MODERNWEST
LONGMONT, LLC, Petitioner
v.
FEDERAL AVIATION
ADMINISTRATION, Respondent

No. 25-1150
|
Argued March 19, 2026
|
Decided May 29, 2026

**Synopsis**
**Background:** Real estate developer, which had unsuccessfully sought approval from city to build mixed-use housing development directly under the approach and departure paths of a federally funded, public-use airport operated by city, petitioned for review of letters of the Federal Aviation Administration (FAA) to city in which FAA advised city that the proposed development would violate a grant assurance upon which airport's federal funding was conditioned.

The Court of Appeals, Edwards, Senior Circuit Judge, held that there was no evidence of causal relationship between city's decision to deny approval of development and the letters sent by FAA, and thus redressability requirement for Article III standing was not satisfied.

Petition dismissed.

**Procedural Posture(s):** Review of Administrative Decision.

On Petition for Review of a Final Order of the Federal Aviation Administration

**Attorneys and Law Firms**

M. Roy Goldberg argued the cause and filed the briefs for petitioner.

Caroline D. Lopez, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the brief were Brett A. Shumate, Assistant Attorney General, and August E. Flentje, Attorney.

Before: Pillard and Garcia, Circuit Judges, and Edwards, Senior Circuit Judge.

**Opinion**

Edwards, Senior Circuit Judge:

**\*291** Petitioner ModernWest Longmont, LLC ("ModernWest") is a property development company that seeks to build mixed-use housing developments directly under the approach and departure paths of a federally funded, public-use airport operated by the City of Longmont, Colorado ("the City") in its capacity as an airport sponsor. ModernWest needs approval from the City to proceed with its plans. However, after **\*292** a lengthy permitting process, the City effectively denied ModernWest's proposal. ModernWest then filed a petition for review with this court seeking to abrogate messages sent by the Federal Aviation Administration ("FAA") to the City prior to its decision, advising the City that the proposed housing developments would violate a grant assurance upon which the airport's federal funding is conditioned. ModernWest claims that FAA's letters caused the City to reject the proposal and asks that FAA be ordered to vacate and withdraw the letters so the City can revisit the issue.

We dismiss ModernWest's petition for lack of standing. ModernWest "offer[s] nothing but speculation to substantiate [its] claim that a favorable decision from this court will redress [its] injuries by altering [the City's] independent decision[ ]." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 937 (D.C. Cir. 2004). In other words, ModernWest has failed to show that its requested relief, vacatur and withdrawal of FAA's letters, is likely to result in the City redressing its injury by approving the proposed housing development. In addition, in seeking review with this court, ModernWest failed to comply with our requirement that it argue standing, and furnish evidence of standing, in its opening brief. This briefing deficiency also requires us to dismiss the petition for review.

**I. Background**

23

ClarkHill\M8682\499851\288615498.v2-7/10/26

### A. *FAA Role in Property Development Near Airports*

FAA oversees property development near airports in two ways. First, FAA requires, in exchange for federal funding, that airport sponsors ensure that land next to airports is used only for compatible purposes. Second, FAA reviews proposed construction for potential obstruction of flight paths.

### 1. Grant Assurances and Part 16 Enforcement

As the Government aptly explains in its brief to the court:

> [A]irports that receive federal grants for "an airport development project" (known as airport sponsors) are subject to an array of ongoing statutory restrictions that are embodied in the terms of federal grants. 49 U.S.C. § 47107(a). Congress vested the Secretary of the Department of Transportation with broad authority to implement these restrictions in issuing grants pursuant to the Airport and Airway Improvement Act of 1982, *see id.* § 47101 *et seq.*, as delegated to the FAA Administrator, *see* 49 C.F.R. [§] 1.83(a)(9). FAA has implemented these statutory authorities through written grant assurances, which airport sponsors agree to follow on an ongoing basis if any part of an airport project is funded through the grant program.
>
> As relevant here, one such obligation is embodied in Grant Assurance 21. *See* 49 U.S.C. § 47107(a)(10); Grant Assurance 21. That grant assurance requires airport sponsors "to take appropriate action, to the extent reasonable, to restrict the use of land adjacent to or in the immediate vicinity of the airport to activities and purposes compatible with normal airport operations, including landing and takeoff of aircraft" and to "not cause or permit any activity or action thereon which would interfere with its use for airport purposes." *See, e.g.,* [Joint Appendix ("J.A.") 83] (emphasis omitted) (quoting Grant Assurance 21). FAA guidance recognizes that the types of actions that an airport sponsor might be expected to take will depend **\*293** on the degree to which the sponsor has direct control over zoning....

Br. for Respondent 3-4.

FAA enforces compliance with grant assurances through "Part 16" enforcement. *See* 14 C.F.R. § 16.1; *see also* 49 U.S.C. § 47122(a). Part 16 proceedings can result in penalties for noncompliance, such as suspending grant payments, terminating grant eligibility, or mandating corrective action. *See* 14 C.F.R. § 16.109; *see also* 49 U.S.C. § 47111(e).

### 2. Hazard/No-Hazard Determinations

FAA also regulates property developers directly. Any party that "propose[s] ... construction or alteration" that exceeds certain height limits must "file notice with" FAA. 14 C.F.R. § 77.9; *see also* 49 U.S.C. § 44718. Once notified, FAA "conducts an aeronautical study to determine the impact of [the] proposed structure," evaluating factors like "[t]he impact on arrival, departure, and en route procedures," "[a]irport traffic capacity," "[m]inimum obstacle clearance altitudes," and "[t]he potential effect on [air traffic control] radar, direction finders, [and] tower line-of-sight visibility." 14 C.F.R. § 77.29(a); *see also* 49 U.S.C. § 44718(b)(1).

Based on the results of its study, FAA "issue[s] a determination stating whether the proposed construction ... would be a hazard to air navigation." 14 C.F.R. § 77.31(a); *see also* 49 U.S.C. § 44718(b)(2). "[W]hen the aeronautical study concludes that the proposed construction ... will exceed an obstruction standard and would have a substantial aeronautical impact," FAA "issue[s] a Determination of Hazard to Air Navigation." 14 C.F.R. § 77.31(c). When a proposed construction "does not exceed any of the obstruction standards" or exceeds standards without a "substantial aeronautical impact," FAA "issue[s] a Determination of No Hazard." *Id.* § 77.31(d)-(e). All determinations state:

> This determination concerns the effect of this structure on the safe and efficient use of navigable airspace by aircraft and does not relieve the sponsor of compliance responsibilities relating to any law, ordinance, or regulation of any Federal, state, or local government body.

Procedures for Handling Airspace Matters, FAA Order No. JO 7400.2P § 7-1-4(a)(7)(c) (FAA Apr. 20, 2023).

### B. *The Approval Process for ModernWest's Proposal*

### 1. ModernWest's Proposed Development

ModernWest proposed a mixed-use development near Longmont's Vance Brand Airport. The development includes two project components, called ModernWest 1 and ModernWest 2. ModernWest 1 is a "combined commercial/industrial and multi-family residential development," and

24

ModernWest 2 is a "predominantly multi-family residential development." J.A. 182.

FAA issued Determinations of No Hazard for ModernWest 1 and 2. *Id.* Each determination stated that the proposals "do[ ] not exceed obstruction standards" and "would not be a hazard to air navigation." *See, e.g.*, J.A. 20, 23, 26, 29. However, the determination warned, as required by FAA regulations, that it "does not relieve the sponsor of compliance responsibilities relating to any law, ordinance, or regulation of any Federal, State, or local government body." *See, e.g.*, J.A. 21, 24, 27, 30.

### 2.  The City's Permitting Process and FAA's Incompatibility Letters

The City preliminarily approved plans for ModernWest 1 in 2021. ModernWest submitted plans for preliminary approval of ModernWest 2 in 2023. After learning of **\*294** the ModernWest 2 plans, the Airport Manager contacted an engineer in the local FAA office. The Airport Manager flagged that the City was considering an "apartment complex off the end of the runway" and asked if "planning like this [could] potentially be considered by ... FAA as a violation of grant assurances." J.A. 35-36 (emphasis in original). The FAA engineer responded that the proposed developments "could be a violation of [G]rant [A]ssurance 21" and informed the Airport Manager that FAA would "draft a letter to the [C]ity to remind [it] of the [G]rant [A]ssurance." J.A. 35.

On June 13, 2023, FAA sent the City a letter "remind[ing] [it] of its contractual obligations with [FAA]." J.A. 38. FAA "view[ed] th[e] proposed [ModernWest 2] development as an incompatible land use and contrary to Grant Assurance #21." *Id.* The letter added that "[f]ailure to comply with the Federal [G]rant [A]ssurance[ ] may result in ... an order terminating eligibility for grants or suspending the payment of grant funds." *Id.*

Despite FAA's letter, the City preliminarily approved plans for ModernWest 2 on June 26, 2024. On July 2, 2024, FAA again wrote to the City. It noted that it "ha[d] had ... conversations with City staff regarding the incompatibility of the development" and reiterated that ModernWest 2 was "contrary to Grant Assurance #21." J.A. 83. FAA acknowledged that the project had received a Determination of No Hazard, but it explained that the Determination "strictly relates to [the proposal's] impact to the FAA controlled airspace and is not an approval of the development." *Id.*

The FAA letters were not the only expressions of opposition to ModernWest 2. The Longmont Airport Advisory Board contacted the City urging it, "in the strongest possible terms[,] to vote against the proposed [development]." J.A. 294 (emphasis removed). The Board expressed concern about potential noise complaints by residents of the proposed apartment complex and increased risk to pilots and the public, as "there ha[d] been incidents in the past where aircraft have ... ended up in the fields where [ModernWest 2] [was] proposed." J.A. 294-95. In addition, the Colorado Department of Transportation ("CDOT") informed the City that ModernWest 2 was incompatible with state grant assurances and could lead to the loss of state funding. J.A. 87.

Later that year, FAA informed the City that, in its view, construction of ModernWest 1 would also violate Grant Assurance 21 and potentially jeopardize the Airport's federal funding. J.A. 176, 179A. CDOT similarly found that ModernWest 1 would violate state grant assurances. J.A. 306.

### 3. The City's Permitting Decision

The City held a public meeting on August 27, 2024, to discuss the ModernWest proposal. During the hours-long meeting, community members asked the City to block the developments, which they feared would jeopardize future FAA and state funding for the airport; create safety risks for pilots, passengers, residents of the proposed apartment buildings, and members of the public; expose the City to liability for aviation accidents; and increase the volume of noise complaints.

On September 10, 2024, the City adopted a written resolution stating that ModernWest 2 "does not comply with applicable statutes, codes, ordinance, and regulations" and "does not meet ... criteria set forth in [the] Longmont Municipal Code," including requirements that applications be "consistent with the comprehensive plan and the purpose of the code and zoning district," "propose[ ] development compatible with surrounding properties in **\*295** terms of land use, site and building layout and design, and access," and "[m]itigat[e] ... potential adverse impacts on surrounding properties and neighborhoods." J.A. 197-99 (third alteration in original) (citation omitted). The City gave four independent reasons for this determination: (1) ModernWest 2 "would violate the City's obligations to comply with rules and regulations prescribed by [FAA]"; (2) ModernWest 2 would violate

25

rules and regulations prescribed by CDOT; (3) the City's independent "find[ing] that [ModernWest 2] is not compatible with surrounding properties and does not mitigate potential adverse impacts on surrounding properties"; and (4) "the reasons stated during the August 27, 2024 public hearing." J.A. 198.

This resolution effectively blocked ModernWest's entire proposed development, not only the ModernWest 2 project component, as ModernWest has given no indication that it intends to pursue ModernWest 1 even if it cannot build ModernWest 2. And shortly after adopting this resolution, the City also referred the ModernWest 1 project to the Planning and Zoning Commission for a public hearing, noting that FAA's letters "constitute[d] a significant factor warranting further review." J.A. 349. ModernWest 1 has not yet received final approval.

### 4. FAA's Final Communication

ModernWest requested that FAA withdraw its letters to the City. This initiated an extensive correspondence between ModernWest and FAA in which FAA repeatedly emphasized that authority to approve property development lay with the City and recommended that ModernWest "work [directly] with the City." J.A. 223; *see also* J.A. 284. The correspondence concluded on April 30, 2025, when FAA sent an email to ModernWest stating:

> We have reviewed your letter. We also have reviewed the prior correspondence referenced in your letter. We also discussed this matter with you by telephone on January 23, 2025. The FAA's position remains unchanged.

J.A. 12. ModernWest now petitions for review.

### II. Analysis

#### A. *ModernWest Lacks Standing to Petition for Review*

We dismiss ModernWest's petition for review for lack of standing. ModernWest has not satisfied its burden to show that the likely result of ordering FAA to vacate and withdraw its letters would be the City changing its mind and approving the proposed developments.

#### 1. ModernWest Has Not Shown that a Favorable Decision Is Likely to Redress Its Injuries

"To maintain an action in federal court, [petitioners] must show they have suffered an 'injury in fact,' 'fairly traceable to the challenged action of the [respondent],' and it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable [judicial] decision.'" *Johnson v. Becerra*, 111 F.4th 1237, 1243 (D.C. Cir. 2024) (third alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). When a petitioner "is 'an object of the action (or forgone action) at issue,'" then "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.'" *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 112, 145 S.Ct. 2121, 222 L.Ed.2d 370 (2025) (quoting *Lujan*, 504 U.S. at 561-62, 112 S.Ct. 2130). But "[w]hen the [petitioner] is not the object of a government regulation," the **\*296** law requires more. *Id.* In such cases, "causation and redressability ... depend on how regulated third parties not before the court will act in response to the government regulation or judicial relief," *id.*, which makes it "substantially more difficult" for petitioners to satisfy their burden of establishing standing, *Bennett v. Donovan*, 703 F.3d 582, 587 (D.C. Cir. 2013) (citation omitted).

In this circuit, there are "two categories of cases where standing exists to challenge government action though the direct cause of injury is the action of a third party." *Renal Physicians Ass'n v. U.S. HHS*, 489 F.3d 1267, 1275 (D.C. Cir. 2007) (summarizing *Nat'l Wrestling*, 366 F.3d at 940-41). "First, standing exists where the challenged government action authorized conduct that would otherwise have been illegal." *Id.* And, "[s]econd, standing has been found 'where the record presented substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and the likelihood of redress.'" *Id.* (quoting *Nat'l Wrestling*, 366 F.3d at 941). Only the second category is at issue in this case.

In *National Wrestling*, we relied on three Supreme Court decisions to emphasize that petitioners have the "burden ... to adduce facts showing that [the independent choices of the regulated third party] have been or will be made in such manner as to produce causation and permit redressability of injury." *Nat'l Wrestling*, 366 F.3d at 938 (quoting *Lujan*, 504 U.S. at 562, 112 S.Ct. 2130); *see also Simon v. E. Ky.*

26

*Welfare Rts. Org.*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "[M]ere 'unadorned speculation' as to the existence of a relationship between the challenged government action and the third-party conduct 'will not suffice to invoke the federal judicial power.'" *Nat'l Wrestling*, 366 F.3d at 938 (quoting *Simon*, 426 U.S. at 44, 96 S.Ct. 1917). To have the requisite "substantial evidence of a causal relationship" that "leav[es] little doubt as to causation and the likelihood of redress," *National Wrestling* explained, the record often looks like that of *Tozzi v. HHS*, 271 F.3d 301 (D.C. Cir. 2001), and *Block v. Meese*, 793 F.2d 1303 (D.C. Cir. 1986), where plaintiffs "introduced affidavits and other record evidence demonstrating that [the third parties] opted to [act] as a direct result of the [government's] decision." *Nat'l Wrestling*, 366 F.3d at 941-42; *see also Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 901 F.2d 107, 116 (D.C. Cir. 1990) (finding "overwhelming evidence" of causation and redressability); *Freedom Republicans, Inc. v. Fed. Election Comm'n*, 13 F.3d 412, 418 (D.C. Cir. 1994) (finding "formidable evidence"); *D&F Afonso Realty Tr. v. Garvey*, 216 F.3d 1191, 1194 (D.C. Cir. 2000) (relying on affidavits to find causation and redressability).

There are no such affidavits or supporting record facts here. Just like the claimants in *National Wrestling*, and unlike those in *Tozzi* and *Block*, ModernWest has "nothing to substantiate [its] assertion that a decision from the court vacating [FAA's actions] will redress [its] injuries by altering [the City's] independent decision[ ] whether to [approve ModernWest's proposed developments]." *Nat'l Wrestling*, 366 F.3d at 939. Thus, there is no credible evidence to indicate that a favorable permitting decision is the predictable result of ModernWest's requested judicial relief.

*First*, in *National Wrestling*, "[e]ven if appellants prevailed on the merits in their challenge to the [agency action], [the underlying legal requirements] would still be in place." *Id.* at 939-40. Likewise, in this **\*297** case the City will still remain bound to comply with Grant Assurance 21 even if FAA withdraws its letters. ModernWest's requested relief will not change the City's legal obligations under Grant Assurance 21, nor will it affect FAA's authority to initiate Part 16 enforcement proceedings against the City if FAA determines that the proposed developments, once built, violate the Grant Assurance. The City "would remain free to [block ModernWest's proposed developments]." *Id.* at 940.

*Second*, while there is no dispute that the City cited FAA's actions as one reason for blocking ModernWest's project, the record is clear that the City took into account other objections to ModernWest's proposal. In its formal written resolution denying the ModernWest 2 application, the City stated that the proposed developments "d[id] not meet ... criteria set forth in [the] Longmont Municipal Code," including that projects must be "consistent with the comprehensive plan and the purpose of the code and zoning district," "compatible with surrounding properties," and "mitigat[e] ... potential adverse impacts on surrounding properties." J.A. 197-98 (citation omitted). The City went on to explain that it based its decision on, in addition to FAA's letters, CDOT's finding that the proposal "would violate ... [its] rules and regulations"; the City's own finding that the proposal "is not compatible with surrounding properties and does not mitigate potential adverse impacts on surrounding properties"; and the "reasons stated during the August 27, 2024 public hearing," which included concerns about safety, litigation risk, and noise. J.A. 198.

ModernWest presents no evidence undermining the validity of any of the City's non-FAA rationales. It merely accuses CDOT of having "clearly copied FAA's letters," which falls far short of its burden. Pet'r's Reply Br. 14. And even if we credited ModernWest's arguments rebutting the City's reliance on CDOT's conclusion, ModernWest does not address the City's independent finding that the development was incompatible with surrounding land uses, nor does it respond to the Longmont community's strong opposition to approval, both of which the City relied upon.

The fact that considerations other than FAA's letters were in play makes this case different from *Tozzi* and *Block*, where "[t]here [was] nothing ... indicating that the third parties ... would have had reason to continue their injurious conduct unaltered in the absence of the challenged government action." *Nat'l Wrestling*, 366 F.3d at 943. ModernWest has given us no reason to believe that, if FAA withdrew its letters, the City would abandon its other, independent rationales for refusing to authorize the development. Doing so is necessary for ModernWest to illuminate, as it must, a "predictable chain of events" that ends with a favorable permitting decision. *Diamond Alt. Energy*, 606 U.S. at 121, 145 S.Ct. 2121 (citation omitted).

It is clear from the foregoing discussion that the lack of redressability dooms ModernWest's standing to pursue this action. ModernWest's argument seems to be that it

27

ClarkHill\M8682\499851\288615498.v2-7/10/26

has standing because the City had, in the early stages of the permitting process, looked favorably on ModernWest's proposal. *See* Pet'r's Reply Br. 15. However, this argument ignores the fact that some weighty non-FAA considerations against ModernWest's proposal did not come into play until after the City's initial consideration of the proposal. More issues, beyond FAA's letters, came to light, and negative public reactions surfaced. The City's final disposition of the matter indicates that withdrawing FAA's letters would not likely cause the City to return to its original position because other serious concerns, which the City never weighed in its initial consideration of ModernWest's proposal, now carry the day. At most, **\*298** withdrawing the letters might give ModernWest "better odds" of a favorable outcome. *Nat'l Wrestling*, 366 F.3d at 939. But "ill-defined 'better odds' [are] not close to what is required" for redressability, *id.*, because they "require guesswork" about what the final outcome will be, *Hecate Energy LLC v. FERC*, 126 F.4th 660, 666 (D.C. Cir. 2025) (citation omitted).

### 2. ModernWest Never Argued Standing in Its Opening Brief

Finally, ModernWest's failure to provide evidence of standing also runs afoul of this circuit's requirement that petitioners argue standing, and identify supporting evidence of standing, in their opening briefs. Circuit Rule 28(a)(7) states that, "[i]n cases involving direct review in this court of administrative actions, the brief of the ... petitioner must set forth the basis for the claim of standing" by making "arguments and cit[ing] evidence establishing by a 'substantial probability' the claim of standing." D.C. Cir. R. 28(a)(7) (2025) (citation omitted); *see also SSM Litig. Grp. v. EPA*, 150 F.4th 593, 596 n.1 (D.C. Cir. 2025) (explaining the August 11, 2025 amendment to Rule 28(a)(7) to require "arguments and evidence establishing standing, regardless of whether standing is apparent from the administrative record"). It is not enough to "rest on bare assertions" of standing in an opening brief. *Arapahoe Cnty. Pub. Airport Auth. v. FAA*, 850 F. App'x 9, 12 (D.C. Cir. 2021) (citation omitted). A petitioner "must identify in the record evidence sufficient to support its standing." *Id.* (cleaned up).

ModernWest's opening brief contains only "bare assertions." ModernWest states, but does not argue, that it "suffered

an 'injury in fact,' " the "injury is fairly traceable to ... [FAA's] [l]etters," and "the injury would be redressed by FAA withdrawing the ... [l]etters." Pet'r's Br. 31. It then lists, without argument, four cases in which petitioners had standing. *See id.* at 31-32. ModernWest does not cite any evidence in the record to substantiate its claim to standing, nor does it explain how it satisfies the heightened requirements for standing when challenging government regulation of a third party. "No reasonable reader of the principal [ModernWest] brief would walk away with a clear understanding of [ModernWest's] ... chain of causation[ ] and how a decision of this court could redress th[e] [alleged] harms." *Entergy Ark., LLC v. FERC*, 134 F.4th 576, 581 (D.C. Cir. 2025).

"[W]e occasionally excuse forfeiture and noncompliance with Rule 28(a)(7) for 'good cause.' " *Id.* at 582 (citation omitted). ModernWest does not argue that such "good cause" exists here, and we do not see any reason to excuse its failure to follow our rule. ModernWest has offered no evidence that it had a "reasonable belief that the opening brief was sufficient." *Id.* Nor does ModernWest's "reply brief flesh[ ] out a timely raised theory of standing and also make[ ] standing patently obvious and irrefutable." *SSM Litig. Grp.*, 150 F.4th at 596 (citation omitted). As we have already explained, ModernWest's claim to standing, far from being "patently obvious and irrefutable," actually falls short of what the controlling caselaw requires.

Our "past cases have almost universally dismissed petitions when we have found a violation of Rule 28(a)(7)." *Entergy Ark.*, 134 F.4th at 583. We follow suit here.

### III. Conclusion

For the reasons stated above, ModernWest's petition for review is dismissed for lack of standing.

*So ordered.*

### All Citations

177 F.4th 290

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July, I caused to be served the above Petition for Rehearing or Rehearing *En Banc* on all counsel of record who have entered an appearance and are able to download pleadings from the CM/ECF system by filing this document with the Court through the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ M. Roy Goldberg
Roy Goldberg
Counsel for Petitioner

ClarkHill\M8682\499851\288615498.v2-7/10/26